**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 04-F-0212 (CBS)

JEFFERY HORTON, individually and on behalf of all persons similarly situated,

> Plaintiff,

v.

LEADING EDGE MARKETING INC., a British Columbia corporation, et al.,

> Defendants.

---

**JOINT MOTION FOR ORDER GRANTING PRELIMINARY
APPROVAL TO SETTLEMENT**

---

On February 5, 2007, Plaintiff Jeffery Horton and Defendants Leading Edge Marketing, Inc. (a British Columbia, Canada corporation), Leading Edge Marketing, Inc. (a dissolved Colorado corporation), Leading Edge Marketing, Ltd., Leading Edge Marketing Inc. (of the Commonwealth of the Bahamas), Unipay Processing, Ltd., DM Contact Management Ltd., Geoffrey M. MacKay, Andrew A. MacKay, and Douglas R. MacKay, (collectively the "Leading Edge Marketing Defendants"), and Defendants Advanced Botanicals, Ltd., Warren S. Brander, Matthew Clayton, Technipak, L.L.C., and Mark D. Scheidt, (all of the forgoing parties shall be referred to collectively as the "Settling Parties") entered into a Stipulation and Settlement Agreement ("Settlement Agreement" or "Agreement", Exhibit 1 hereto) following over 18 months of mediation conducted by the Circuit Mediation Office of the U.S. Court of Appeals for the Tenth

Circuit.  On February 22, 2007, the Court of Appeals remanded this matter to this Court for the purpose of settlement.

Now, pursuant to Fed. R. Civ. P. 23, the Settling Parties respectfully request that the Court enter the Settling Parties' proposed Order Granting Preliminary Approval to Settlement ("Preliminary Approval Order") that is attached hereto as Exhibit A to the Settlement Agreement.

This Motion is based upon the grounds stated below, the attached Settlement Agreement and the exhibits thereto, all pleadings and records on file with the Court in this action, and any oral argument to be offered by the Settling Parties' respective counsel at any hearing on this Motion.

### CERTIFICATION PURSUANT TO D. COLO. LOCAL CIV. R. 7.1.A

Pursuant to D. Colo. Local Civ. R. 7.1.A, counsel for the Settling Parties have conferred, by telephone and e-mail in February 2007, regarding this Motion and have stipulated hereto.

### INTRODUCTION

The Settling Parties request that the Court enter their proposed Preliminary Approval Order, by which the Court would accomplish all of the following:

1.  Preliminarily approve the Settlement and the Agreement as fair, reasonable, and adequate to the Class;

2.  Preliminarily certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23 ("Rule 23");

3.  Preliminarily approve Class Counsel as counsel for the Settlement Class pursuant to Rule 23;

4.  Preliminarily approve the Representative Plaintiff as the class representative of the Settlement Class, pursuant to Rule 23;

5.  Approve the form, contents, and method of notice to be given to the Class as set forth in the Settlement Agreement;

-2-

6.  Designate the Settlement Administrator as the administrator of the Settlement and instruct the Settlement Administrator to disseminate, in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order, the Settlement Notice to the Class;

7.  Order the Leading Edge Defendants to produce to the Settlement Administrator, within 5 Business Days after entry of the Preliminary Approval Order, information in a suitable electronic form sufficient to identify the members of the Class (including each Class member's name, mailing address, and electronic mail address as that data is represented in the Leading Edge Defendants' business records) so that the Settlement Administrator may disseminate the Notice, as provided by the Preliminary Approval Order; and order that the information to be provided pursuant to this Paragraph be used by the Settlement Administrator only for purposes of settlement administration and for none other;

8.  Order that certain summary information regarding the Class Population be provided to Class Counsel, as provided by the Preliminary Approval Order;

9.  Establish procedures and schedule deadlines for persons to object to the Settlement, the Settlement Agreement, or Class Counsel's Application;

10. Schedule the Fairness Hearing for a date approximately, but no sooner than, 35 days after the deadline for submitting Claims;

11. Schedule deadlines for the filing of: (a) papers in support of entry of the Final Approval Order; (b) Class Counsel's Application; and (c) objections to the Settlement, class certification, appointment of Class Counsel, the approval of the Representative Plaintiff as the representative of the Class and Class Counsel's Application;

12. Provide that any timely objection to the Settlement or to Class Counsel's Application shall be heard and considered by the Court at the Fairness Hearing; and

13. Provide that the Fairness Hearing may, without further notice to Class Members, be continued or adjourned by order of the Court.

## BACKGROUND

This case was commenced by the Plaintiff on February 5, 2004, on behalf of himself and all persons similarly situated, with the filing of a Complaint alleging that the Defendants'

manufacture, marketing, sale, and distribution of an herbal dietary supplement sold under the names "VigRx," "VigRx for Men Penis Enlargement Formula," and "VigRx for Men Penis Enhancement Formula" ("VigRx") violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title 18 U.S.C. §§ 1961 *et seq*., the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-101 *et seq*., and the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, *et seq*.  In a Second Amended Complaint, now the operative complaint, the Plaintiff alleged a further cause of action under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., against the Leading Edge Marketing Defendants on behalf of himself and a subclass of California purchasers.

The Plaintiff alleged that Leading Edge Marketing has marketed and sold VigRx on the basis of false and fraudulent claims, including claims that VigRx causes penis enlargement, was scientifically developed, and has been scientifically proven effective in clinical tests.  The Plaintiff further alleged that he and all purchasers of VigRx were damaged by paying as much as $60 per bottle for a product worth far less, perhaps worth nothing, thus suffering a loss of money.  The Plaintiff sought treble damages, forfeiture of any proceeds, restitution of the purchase price, attorneys' fees, costs, pre- and post-judgment interest, and and injunction against further operation of the alleged VigRx operation.

The Defendants denied, and continue to deny, any liability or wrongdoing in connection with the claims alleged in the action.  They have asserted a variety of defenses to Plaintiffs' claims, including those defenses that were briefed by the Defendants for purposes of their motions to dismiss under Rule 12(b)(6), their motions for summary judgment and their opposition to Plaintiffs' motion for class certification.

At a hearing on May 25, 2005, the Court granted in part and denied in part Defendants'
motions to dismiss the Second Amended Complaint.  The Court ruled that Plaintiff had adequately
alleged causes of action against the Defendants under RICO, COCCA, and the California UCL, but
dismissed the cause of action under the CCPA.  The Court also conditionally certified a class of all
consumers who have purchased VigRx from the Leading Edge Defendants after February 5, 2000
and a subclass of California purchasers, appointed the Plaintiff as class representative, and
appointed Class Counsel as counsel for the class and subclass.  A written Order on Pending
Motions followed on May 27, 2005.

The Defendants filed with the Court of Appeals for the Tenth Circuit a timely petition
under Fed. R. Civ. P. 23(f) for permission to appeal the class certification order, which petition was
opposed by the Representative Plaintiff.  The Court of Appeals granted the petition on June 14,
2005 and stayed all proceedings in this Court.

On August 3, 2005, the Court of Appeals referred the case for mediation conferencing.  In
view of the ongoing mediation the Court of Appeals abated the case on November 11, 2005.  No
briefs or substantive motions have been filed in the appeal.

Mediation conferences involving Class Counsel, counsel for the Leading Edge
Defendants, and the Circuit Mediator began on August 26, 2005, and continued thereafter via
several telephonic and in-person conferences taking place on October 2, 2005, September 8, 2005,
January 24, 2006, and February 16, 2006, and other dates.  In addition, counsel for the Class and
the Leading Edge Defendants have corresponded and communicated by telephone extensively
during the period from August, 2005 to the present.

At an in-person mediation session on February 16, 2006, the parties reached a settlement agreement in principle, and thereafter continued to negotiate and draft detailed settlement documents and plans.  The Settling Parties finalized and executed the attached Settlement Agreement on February 5, 2007.  On February 22, 2007, the Court of Appeals granted a joint motion of the Settling Parties to dismiss the appeal pursuant to Fed. R. App. P. 42(b) for the purpose of settling and resolving the case in this Court.

## THE PROPOSED SETTLEMENT AND NOTICE PLAN

I.   THE SETTLEMENT CLASS DEFINITION

The Settlement Class (or "Class") is defined in the Agreement as all consumers who purchased VigRx from Leading Edge Marketing on or after October 1, 2001 and before 11:59:59 PM Mountain Time on the day on which this Order is signed by the Court (the "Class Closing Time"), with the exception of any counsel for the Class.  Also excluded from the Class are: (a) wholesalers, i.e., persons who are recorded in Leading Edge Marketing's business records as purchasing VigRx for resale; (b) sales affiliates of Leading Edge who purchased VigRx; (c) persons who received a full refund of all charges including shipping and handling prior to Class Closing Time.[1]  The Settlement Class thus defined includes over 420,000 persons.

---

1   The Class defined by the Court's orders of May 25 and 27, 2005 included sales affiliates and consumers who received full refunds, whom Defendants claim suffered no injury.  Counsel will be prepared to address this issue at the hearing on this motion.

II.   THE SETTLEMENT CONSIDERATION

According to the proposed Settlement, every Class Member shall be offered their choice of the following Class Benefits:  (a) a Cash Rebate of $10.00,[2] or (b) any or all of the following benefits, which collectively are referred to as the "Alternative Benefit":  (i) a downloadable e-book (i.e., a book in electronic form) relating to men's sexual and reproductive health, having a retail value of $39.95, (ii) a six month subscription to Anti-Spam / Anti-Virus Email Forwarding for Home Users, provided by Security Sage, Inc., having a retail value of $24.95,[3] (iii) access to NWWL.com; (iv) a coupon good for a 10% discount on purchases at www.big-outlet.com; and (v) a coupon good for a 15% discount on purchases at www.dutyfreedepot.com.

No additional purchase is required for a Class Member to claim any Class Benefit, except for Alternative Benefit items (iv) and (v).  Certain Alternative Benefit items, specifically (i) and (iii), may only be validly claimed by Class Members age 18 and over (21 and over in certain states).  The Leading Edge Marketing Defendants selected and arranged for the Alternative Benefits and will address any questions or concerns the Court may have regarding them.

To fund the Cash Rebate offer and any award of attorneys' fees, costs, and an incentive award, the Leading Edge Marketing Defendants have agreed to create and fund a Settlement Fund having a value of at least $6.51 million, consisting of cash and other property.  Upon signing the Settlement Agreement, the Leading Edge Marketing Defendants made an initial deposit of $120,000 into the Fund.  Leading Edge Marketing shall make five additional monthly deposits of $120,000 and a final deposit, no later than three business days before the date of the Fairness

---

2  For Class Members residing outside of the United States, the rebate will be subject to 30 percent withholding for income taxes, and the rebate will be reduced by $3 for such withholding.
3  The availability of this benefit is contingent upon finalization of a contract with Security Sage, Inc.

Hearing, so that the Fund contains enough cash to satisfy all valid claims for Cash Rebates, plus $1.51 million.  The balance of the value of the Fund is constituted by other property, particularly, an equitable mortgage in real property in or around Victoria, British Columbia, which is represented to have an appraised market value of at least $3 million, and the irrevocable appointment by the Defendant Geoffrey MacKay of an attorney with certain rights over the sale of a condominium in the Commonwealth of the Bahamas, which is represented to have an expected value of at least $2 million.  The Fund is sufficient to pay all Cash Rebates (even if all Class Members elect that option), an award of fees and costs, and an incentive award to the Plaintiff that shall be the subject of a separate Application by Class Counsel.  The Alternative Benefit shall be provided at the expense and effort of the Leading Edge Marketing Defendants, and the Fund shall not be applied for that purpose.  The Leading Edge Marketing Defendants shall pay the costs of notice and administration separately, not from the Fund.

If the Court grants final approval to the Settlement and dismisses with prejudice the claims against Defendants, and after such order has become final and nonappealable, the Settlement Administrator shall generate and mail checks to Class Members who requested the Cash Rebate, and an electronic mail containing passwords and instructions (followed up by first-class mail for those Members who cannot be reached by electronic mail) regarding the Alternative Benefit to Class Members who requested that Benefit.

In exchange for the Class Benefits, the Settlement Class shall upon the Effective Date release the named Defendants and their successors, officers, directors, shareholders, partners, agents (including attorneys, the Settlement Administrator, independent contractors and others) and employees from any claim arising out of the sale, manufacture, distribution, marketing, or

advertising of VigRx by Leading Edge Marketing that could have been asserted in the Litigation, specifically,

> any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, or the law of any non-U.S. jurisdiction, that arose prior to the Effective Date and that were or could have been asserted by the Class Members in the Litigation against the Released Persons, including without limitation, claims under the federal Racketeer Influenced and Corrupt Organizations Act, the Colorado Organized Crime Control Act, and the California Unfair Competition Law, arising out of the sale, manufacture, distribution, marketing, or advertising of VigRx by Defendants.

## III.  THE SETTLEMENT IS THE PRODUCT OF EXTENSIVE NEGOTIATIONS AND THE PARTIES BELIEVE IT TO BE FAIR AND ADEQUATE

The Settling Parties reached this Agreement after 18 months of arms-length negotiation with the aid of the Circuit Mediation Office, and believe it to be a fair and adequate settlement.

Plaintiff and Class Counsel agreed to the proposed Settlement after weighing the risks and benefits to the Class of the Settlement compared with those of continuing this protracted litigation. The limited ability of the Defendants to pay a judgment was a predominant factor.  None of the Defendants are covered by a policy of liability insurance that would apply to the claims asserted by the Plaintiff and the Class.  Any judgment or settlement would have to be financed from the assets of the Leading Edge Defendants, the other Defendants being unable to contribute significantly to the settlement without severe hardship and business interruption.  During mediation the Leading Edge Defendants provided Plaintiff with detailed information on their assets, costs and expenses, and income generated from sales of VigRx.  Most of the assets of the Leading Edge Defendants (which are non-U.S. entities) are held outside the United States and Plaintiff believes they would be difficult or impossible to reach in the event the Class obtained a money judgment after trial of

the Litigation.  Based on representations from the Leading Edge Defendants, Class Counsel

believe that their assets do not exceed $7.7 million, of which less than $1.2 million is held in the

United States.

      Accordingly, Class Counsel was faced with the challenge of obtaining reasonable cash

compensation to the over 420,000 members of the Class at a cost the Leading Edge Defendants

could afford and were willing to pay.  Early in the mediation process it was agreed in principle that

an offer of $10 cash per Class Member would be fair and adequate compensation considering the

all the circumstances.  Conventionally this would require a cash deposit of over $4.2 million in a

settlement fund to guarantee payment to all Class Members.  Although Leading Edge was unable

to agree to an all-cash settlement due to its financial situation, Class Counsel insisted that the Cash

Rebate offer be fully funded.  After lengthy negotiations, an adequate Fund of at least $6.51

million in value, consisting of cash and rights to real property was agreed upon.  Class Counsel

also took into consideration that the Appeal could take eighteen months or more to resolve, during

which there would be no discovery and no progress toward trial.  Class Counsel balanced these and

other concerns in determining that the proposed Settlement is fair, reasonable, and adequate in light

of all circumstances and in the best interests of the Class.

      Defendants also reached this Settlement after weighing the risks and benefits of the

Settlement compared with those of continuing the protracted litigation.  Defendants believe that

they would ultimately defeat class certification, and prevail on the merits of this case.  Defendants

and their attorneys, however, are considering the uncertainty and risks inherent in any litigation,

especially complex class action litigation, and the substantial expense and length of time necessary

to defend this action through a Tenth Circuit appeal, discovery, summary judgment motions, a

possible trial, possible post-trial motions, and possible appeals.  Based upon their consideration of all of these factors, the Defendants wish to settle the action on the terms and conditions set forth in the Settlement Agreement, to avoid the burden, inconvenience, and expense of continued protracted litigation and to finally end any and all claims that are or could have been asserted in the action including claims arising out of or relating or referring to Plaintiffs' allegations.

IV.   THE PROPOSED NOTICE PLAN

The proposed notice plan utilizes electronic mail and first-class mail, where necessary, to effectuate notice to the Class.  The parties have prepared a full Notice (Exhibit E to the Settlement Agreement), based on an illustrative products liability notice published by the Federal Judicial Center on its website, http://www.fjc.gov, and a Short-Form Notice (Exhibit F to the Settlement Agreement).

As soon as possible after entry of the Preliminary Approval Order but in no event later than 5 Business Days after entry of the Preliminary Approval Order, the Leading Edge Defendants shall produce to the Settlement Administrator information in a suitable electronic form sufficient to identify the members of the Class (including each Class member's name, mailing address, and electronic mail address as that data is represented in the Leading Edge Defendants' business records) ("Class Data") so that the Settlement Administrator may disseminate the Notice and administer the claims process.  The Leading Edge Defendants shall also produce to Class Counsel certain summary data regarding the Class Population, in particular: (1) the number of Class Members and (2) the geographic distribution of Class Members by state and country.

As soon as possible but not more than 15 Business Days after receiving the Class Data, the Settlement Administrator shall initiate delivery of the Short Form Notice to the electronic mail

address of each Class Member having one in the Class Data.  The Short Form Notice directs recipients to the Settlement website where the full Notice and Claim Form are posted.

For Class Members having no electronic mail address in the Class Data, the Settlement Administrator shall deliver the full Notice and Claim Form by first-class mail (or international postal mail), postage prepaid no later than 45 Business Days after receiving the Class Data.  If electronic mail delivery of the Notice is returned as undeliverable for any Class Members, the Settlement Administrator shall deliver the Notice and Claim Form to those Class Members by first-class or international postal mail within 45 Business Days after receiving the Class Data.  Before mailing the Settlement Notice, the Settlement Administrator will obtain address updates utilizing a National Change of Address ("NCOA") database and will utilize any updated addresses for Class Members that can be obtained from the NCOA database.

The Settling Parties believe that notice by printed publication will not appreciably improve the quality of the notice process.  The members of the Class are all known to the Leading Edge Marketing Defendants, who possess a database containing their names and mailing addresses and, for the vast majority, electronic mail addresses, enabling individual notice to each Class Member according to the proposed notice plan.  Moreover, the Class Members are geographically dispersed throughout the world.  It is therefore believed that notice by printed publication would not be cost-effective.

To claim a benefit according to the proposed Settlement, a Class Member must return the Claim Form to the Administrator by mail, postmarked before the 45th calendar day after deadline for the last Notice to be sent by postal mail.  The Settlement Administrator shall also provide on-line means on the Settlement website for the submission of claims.

## **ARGUMENT**

I.   INTRODUCTION

The settlement of disputed claims is favored by the federal courts.  *See, e.g., Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts . . . ."); *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (approving class action settlement, "It has been held proper 'to take the bird in the hand instead of the prospective flock in the bush.'").  The purpose of requiring court approval of a settlement is to ensure that the settlement is fair, reasonable, and adequate.  *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  Approval of a settlement of a class action is committed to the sound discretion of the trial court.  *Id.*  The fairness inquiry generally is a two-step process:  first, the court conducts a preliminary evaluation of the fairness of the settlement; second, the court holds a formal fairness hearing at which the arguments for and against the settlement are made.  4 Manual for Complex Litigation (Third) § 30.41 at 236-37 (1995).

At the preliminary approval stage, the Court should examine whether the proposed settlement is within the range of possible final approval, bearing in mind that the Court, as well as any objectors, will have the opportunity to consider all the relevant factors at the Fairness Hearing. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). In conducting this determination, the court should grant preliminary approval of a settlement if, among other things, it has been reached through arm's-length bargaining and is not collusive.  *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).

Four factors are to be considered in determining whether a proposed class action settlement is fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Nuclear Pharmacy*, 741 F.2d at 324.

II.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE, AND ADEQUATE

A.   The Settlement Agreement Provides for a Formal Fairness Hearing

The Settlement Agreement provides for a formal Fairness Hearing to be set for approximately, approximately, but no sooner than, 35 days after the deadline for submitting Claims.  In addition, the Settlement Agreement provides for mailed individual notice of the Fairness Hearing to Class Members.  At the Fairness Hearing, the Court will consider, among other things, whether to grant final approval to the Settlement and the terms of the Settlement Agreement and whether to grant Plaintiffs' Counsel's Application for attorneys' fees and costs and a special award, as well as any objections to Settlement, Settlement Agreement, or Plaintiffs' Counsel's Application.  These provisions of the proposed Settlement and Preliminary Approval Order satisfy "[t]he essence of procedural due process . . . that the parties be given notice and opportunity for a hearing."  *Nuclear Pharmacy*, 741 F.2d at 325 (affirming the trial court's approval of a derivative settlement where the objecting shareholder "was afforded the full panoply of procedural due process when he received adequate notice of the settlement hearing and had the significant

opportunity to be heard by submitting an extensive memorandum to the court prior to the hearing detailing his objection to the settlement").

B.   The Settlement Was Reached Through Arm's-Length Negotiations

The primary factor relevant to the determination of the presumptive fairness of a proposed class settlement is whether the settlement was reached through arm's-length negotiations among the parties.   *See Southern Ohio Correctional Facility*, 173 F.R.D. at 211; *see also Nuclear Pharmacy*, 741 F.2d at 324 (the first factor for approval is "whether the proposed settlement was fairly and honestly negotiated").   In this case, the settlement was reached after over 18 months of arm's-length negotiations under the aegis of the Circuit Mediator's Office.

Neither the substantive terms of the proposed Settlement nor its provision regarding attorneys' fees and costs to be paid to Class Counsel indicate that the Settlement Agreement is the product of fraud, collusion, or abandonment of the interests of the Class.   Thus, the primary factor in favor of preliminary approval of the Settlement is satisfied.

 Moreover, the Defendants vigorously dispute the merits of Plaintiff's claims, and the propriety of class certification in this case.   In addition, the Tenth Circuit's decision to grant interlocutory review of the 2005 class certification order, and its stay of proceedings in this Court, made the ultimate outcome of any classwide litigation uncertain.

C.   Investigation and Discovery Have Been Sufficient to Allow Counsel and the Court to Make an Informed Evaluation of the Proposed Settlement

An additional factor to be considered, if briefly at the preliminary approval stage, is the judgment of the parties that the settlement is fair and reasonable.   *Nuclear Pharmacy*, 741 F.2d at 324; *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("The views and

experience of counsel are legitimate factors to consider."). Here, the Settling Parties reached the Settlement Agreement not only after extensive arm's-length bargaining, but also during mediation, after vigorous litigation, both formal and informal discovery, and a thorough development and analysis of the claims and defenses in this case.

The Defendants produced to Plaintiffs thousands of pages of documents and responded to Plaintiff's interrogatories. The Defendants took the deposition of the Plaintiff. The Leading Edge Marketing Defendants produced two Rule 30(b)(6) witnesses regarding certain details of their operations.

Moreover, the underlying facts and legal theories were thoroughly aired in the briefing and arguing of Defendants' motions to dismiss and for summary judgment, and the motions related to class certification. In short, the investigation, discovery, and analysis to date are more than sufficient for the Settling Parties and the Court to make informed decisions about the proposed Settlement. *See Nuclear Pharmacy*, 741 F.2d at 324. The judgment of the Settling Parties and their respective counsel is that the proposed Settlement is fair, reasonable, and adequate.

   D.  <u>The Plaintiff Can Fairly and Adequately Represent the Interests of the Class</u>

Rule 23(a) requires that the Plaintiff fairly and adequately protect the interests of the Settlement Class. The inquiry into whether the Plaintiff is an adequate Class representative involves assessing whether any of his interests are antagonistic to or otherwise present an irreconcilable conflict with those of the Class, and whether he will vigorously prosecute the action on behalf of the Class. The Plaintiff has no conflict of interest with the Class. Further, the Plaintiff has demonstrated his willingness to vigorously prosecute this action by traveling to Los Angeles to be deposed, and keeping informed about the proceedings and the progress of settlement

negotiations.  The adequacy of his representation is also supported by the terms of the proposed

Settlement, in which a substantial Class-wide cash benefit and other benefits are being provided

after months of sometimes contentious negotiation.

III.   THE SETTLING PARTIES' PROPOSED FORMS OF NOTICE AND METHODS OF
       NOTICE DISSEMINATION SATISFY RULE 23 AND DUE PROCESS

       Under Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to

all class members who would be bound by a proposed settlement, voluntary dismissal or

compromise."  The notice should adequately describe the nature of the action, the definition of the

class, the class claims and defenses, the right to appear through individual counsel, the right to

exclude oneself from the class, and the binding effect of a class judgment.  Fed. R. Civ. P.

23(c)(2)(B).  It is submitted that the proposed full Notice (based on a form notice posted on the

Federal Judicial Center's website) and the Short Form Notice meet those requirements.  The

Notices fairly, accurately, and reasonably inform Class Members of (1) appropriate information

about the nature and history of this litigation, Plaintiff's claims, the Defendants' defenses, and the

essential terms of the Settlement Agreement; (2) appropriate information about how to obtain

additional information regarding this litigation and the Settlement Agreement; (3) appropriate

information as to how Class Members may opt out of the Settlement Class; and (4) appropriate

information about how to challenge the Settlement, object to Class Counsel's Application for an

award of attorneys' fees, reimbursement of costs, and a special award to the Plaintiff, or appear and

be heard at the Fairness Hearing.  The Notices fairly and adequately inform Class Members that if

they do not comply with the procedures and the deadline for filing Objections, they will lose any

opportunity to have their Objection considered at the Fairness Hearing, to otherwise contest

approval of the Settlement, or to appeal from any order or judgment entered by the Court in connection with the Settlement.

According to the proposed notice plan, the Leading Edge Marketing Defendants shall produce to the Settlement Administrator information in a suitable electronic form sufficient to identify the members of the Class (including each Class Member's name, mailing address, and electronic mail address as that data is represented in the Leading Edge Marketing Defendants' business records).  The Administrator shall post the full Notice on the case website and deliver the Notice or Short Form Notice to each individual Class Member by electronic mail (if possible), or shall deliver the full Notice by first-class mail (if electronic delivery fails).  Individual notice constitutes the "best notice practicable under the circumstances." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1975).  Notice by electronic mail is proposed here due to the substantial cost savings over sending 420,000 notices by first-class mail.  Electronic mail is an accepted means of class notice, especially in cases involving Internet-based services and marketing such as the instant case.[4]

The Settling Parties believe that there is no additional mode of distribution that would be reasonably likely to notify Class Members of the terms and effects of the Settlement.  In particular, notice by printed publication is unlikely to be cost-effective due to the geographic dispersion of the Class and the effectiveness of the individual notice as provided in the proposed notice plan.

---

4  Attached hereto as Exhibits 2 through 10 are class action notices sent by electronic mail and orders providing for electronic mail notice in recent cases, specifically, *In re PayPal Litigation*, No. CV-02-01227-JF (N.D. Cal. July 12, 2004) (Exhibits 2 & 3); *Cox v. Microsoft Corp.*, No. 105193/00 (N.Y. Sup Ct. Feb. 17, 2006) (Exhibit 4); *McArthur v. Spring Street Networks*, No. 100766/04 (N.Y. Sup Ct.) (Exhibit 5); *Lane's Gifts and Collectibles v. Google, Inc.*, No. CV-2005-52-1 (Ark. Cir. Ct.) (Exhibits 6 & 7); *Chavez v. Netflix, Inc.*, No. CGC-04-434884 (Cal. Super. Ct., Sep. 23, 2004) (Exhibits 8 & 9); and *In re Sony BMG CD Technologies Litigation*, No. 1:05-cv-09575-NRB (S.D.N.Y. Jan 6, 2006) (Exhibit 10).

Taken together, the Notices and the plan for dissemination of those notices clearly satisfy the Federal Rules of Civil Procedure and the requirements of due process.  The Settling Parties request that the Court approve the proposed Notices and notice plan.

## <u>CONCLUSION</u>

For the reasons above and those stated in the Settlement Agreement and related documents, the Settling Parties respectfully request that the Court enter the proposed Preliminary Approval Order.

Dated: February 26, 2007

/s Bradley S. Corsello
Bradley S. Corsello
Corsello Law P.C.
485 Seventh Avenue 14th Floor
New York, New York 10018

David B. Seserman
Hale Friesen, LLP
1430 Wynkoop Street  Suite 300
Denver, Colorado 80202

James A. Jablonski
Rumler Tarbox Lyden Law Corporation PC
1777 S Harrison Street  Suite 1250
Denver, Colorado 80210

*Attorneys for Representative Plaintiff Jeffery Horton and the Class*

/s Michael S. Freeman
Michael S. Freeman
Steven David Zansberg
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203-4004

*Attorneys for Defendants Leading Edge Marketing, Inc. (of British Columbia), Leading Edge Marketing, Inc. (a dissolved Colorado corporation), Leading Edge Marketing, Ltd., Leading Edge Marketing Inc. (of the Commonwealth of the Bahamas), Unipay Processing, Ltd., DM Contact Management Ltd., Geoffrey M. MacKay, Andrew A. MacKay, and Douglas R. MacKay*

/s James R. Prochnow
James R. Prochnow
Justin J. Prochnow
Greenberg Traurig, LLP
1200 17th Street  Suite 2400
Denver, Colorado 80202

*Attorneys for Defendants Advanced Botanicals, Ltd., Warren S. Brander, and Matthew Clayton*

/s Stanley L. Garnett
Stanley L. Garnett
Annie T. Kao
Brownstein, Hyatt & Farber, P.C.
410 17th Street
22d Floor
Denver, Colorado 80202-4437

*Attorneys for Defendants Technipak, L.L.C., and Mark D. Scheidt*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2007 I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following

email addresses:

Michael Stephen Freeman
mfreeman@faegre.com

Stanley L. Garnett
sgarnett@bhf-law.com

Robert Benson Jancu
rjancu@jancu.com

Annie T. Kao
akao@bhf-law.com

James Raymond Prochnow
prochnowj@gtlaw.com

Justin James Prochnow
prochnowjj@gtlaw.com

Steven David Zansberg
szansberg@faegre.com

and I hereby certify that I have mailed or served the document or paper to the following non

CM/ECF participants in the manner (mail, hand delivery) indicated by the non-participant's name:

NONE

February 26, 2007

s/  Bradley S. Corsello
Bradley S. Corsello
Corsello Law P.C.
485 Seventh Avenue 14th Floor
New York, New York 10018
*Attorney for the Representative Plaintiff Jeffery*
*Horton and the Class*