IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-00212-PSF-CBS

JEFFERY HORTON, individually and behalf of all persons similarly situated,

    Plaintiff,

v.

LEADING EDGE MARKETING INC., a British Columbia corporation,
LEADING EDGE MARKETING INC., a Bahamas corporation,
LEADING EDGE MARKETING LTD., a Cyprus company,
LEADING EDGE MARKETING INC., a dissolved Colorado corporation,
UNIPAY PROCESSING, LTD., a Cyprus company,
GEOFFREY M. MACKAY,
DM CONTACT MANAGEMENT LTD., a British Columbia corporation,
ANDREW A. MACKAY,
DOUGLAS R. MACKAY,
TECHNIPAK, L.L.C., a Colorado limited liability company,
MARK D. SCHEIDT,
ADVANCED BOTANICALS, LTD., a British Columbia corporation, and
WARREN S. BRANDER,

    Defendants.

## ORDER AND NOTICE RE: PROPOSED CLASS SETTLEMENT

This matter comes before the Court on the Joint Motion for Order Granting Preliminary Approval to Settlement ("Joint Motion") (Dkt. # 325), filed February 26, 2007. The Court had scheduled a hearing on the Joint Motion for March 19, 2007 (Dkt. # 327), but due to the undersigned's unavailability on that date the hearing was vacated. Nonetheless, the undersigned has reviewed the Joint Motion, the Stipulation and Settlement Agreement ("Settlement Agreement") filed therewith as Exhibit 1, and the proposed order attached as Exhibit A to the Settlement Agreement ("Proposed

Order"). The Court has determined that prior to re-scheduling a hearing on the Joint Motion it would be more efficient to alert the parties in advance to the Court's concerns about certain provisions in the proposed class settlement for the following reasons.

The Court first notes that the Settlement Agreement provides that if the Court modifies any term of this Settlement Agreement in a manner that any settling party "believes to be materially detrimental and violative of the spirit of the Agreement" the settling party shall notify the other settling party and "confer in good faith" to resolve the issue and "take all reasonable actions that are necessary to obtain the Court's approval of the resolution agreed upon" by the settling parties (Settlement Agreement, ¶ 3.5). In order to facilitate this process, the Court advises the parties of the following concerns it has regarding certain provisions of the Settlement Agreement and the Proposed Order.

The Proposed Order, in describing the "benefits" offered to the Class Members, states that the defendant has "committed to changing its advertising and marketing" of the VigRx product at issue here in that future advertising "shall not claim that VigRx causes permanent penis enlargement." (Proposed Order at 5). The Court further notes that the Settlement Agreement contains provisions regarding future marketing by Defendant Leading Edge that it "shall not make advertising claims that VigRx causes permanent penis enlargement" and shall direct its sales affiliates that no claim should be made that "VigRx causes permanent penis enlargement." (Settlement Agreement, ¶¶ 4.1.1 and 4.1.2). However, the Court finds no provision in the Settlement Agreement or the Proposed Notice that establishes any enforcement mechanism for such

provisions, including specifically that these provisions will be enforced by an injunction issued by this Court. In the absence of such injunction or court order, the protections offered by these provisions may be illusory.

Furthermore, the Court has serious questions whether this above relief, even if agreed to by the defendants in injunctive form, is sufficient to provide any meaningful protection for the purported plaintiff class given the strong showing made by plaintiff that the product promoted by defendant has no efficacy whatsoever. In particular, the Court notes the declaration of Dr. John H. J. Bancroft, submitted by plaintiff in support of his motion for a temporary restraining order and preliminary injunction (Dkt. # 3). Dr. Bancroft, the director of the Kinsey Institute for Research in Sex, Gender and Reproduction, stated that he was aware of no "drug or other intervention, apart from testosterone administered at the appropriate developmental stage, that can fundamentally change penile size, . . . ." *Id.*, ¶ 5. He further stated that he "seriously doubted any medication can fundamentally change the size of the penis." *Id.* If Dr. Bancroft is correct, the agreement of defendants to make no claim of "permanent penis enlargement" seems to provide little or no protection for the purported plaintiff class.

The Court further notes that the delivery of the proposed Class Notice, and the obtaining of claim forms by putative class members, may be carried out primarily by electronic transmission rather than regular mail, which may reduce the number of class members making claims under the settlement. This Court has previously expressed concern that it is "troubled with the issue of whether a significant number of class

members are actually aggrieved to the point that they wish to seek redress" and that it felt that "there is a strong possibility, if not likelihood, that many members of the putative class would object to being identified as members." (Order on Class Certification (Dkt. # 265) at 16-17).

The Court further notes that the proposed benefit to class claimants under the proposed Settlement Agreement is either 1) a cash payment from the settlement fund of ten dollars ($10), or 2) items described as "Alternative Benefits" consisting of a downloadable e-book, anti-spam/anti-virus e-mail subscription, access to a website that apparently shows female wrestling matches, or electronic coupons for purchase of goods at electronic websites, as to which various values have been assigned. (Settlement Agreement, ¶ 4.5.1.)

The Court notes that the Settlement Agreement and Proposed Order provide that Class Counsel may seek an award of attorneys' fees and reimbursement of costs of up to $1.5 million (Settlement Agreement, ¶¶ 8.1 and 8.2) to be paid solely out of the Settlement Fund which is expected to have a value of at least $6.51 million (Proposed Order at 4). The Settlement Agreement recognizes that the amount of attorneys' fees and reimbursements of costs "shall be in the sole discretion of the Court." (Settlement Agreement, ¶ 8.7.) Nonetheless, this Court is concerned that the parties, counsel and class members not be misled by any preliminary approval of the Settlement Agreement given by this Court into believing that this Court will automatically approve a fee and expense award to the class counsel of $1.5 million for this case. In fact, it is the present inclination of this Court, given the above expressed concerns about the number

of putative class members who will actually seek redress, given the limited amount of the cash payment, and the intangible value of the so-called "Alternative Benefits," to consider any award of attorneys' fees and costs in relation to the amount of cash payments actually made to the claiming class members and not in consideration of the expected settlement fund of $6.51 million when evaluating the benefit to the class.

This does not mean that the Court has predetermined the amounts of attorneys' fees and costs it may award, but rather it seeks to put counsel and class members on notice that the amount of fees and costs mentioned in the settlement agreement is not necessarily the amount that will be awarded.

The parties are directed to advise the Court with 30 days of any proposed modifications to the Settlement Agreement or Proposed Order in light of this Notice, or otherwise advise the Court that they stand by the proposed Settlement Agreement as tendered.

DATED:  June 6, 2007

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge